359 S.E.2d 853

**In the Matter of Patsy McGRAW.**

**No. 17278.**

Supreme Court of Appeals of
West Virginia.

July 15, 1987.

William M. Lester, Charleston, for appellant.

Charles R. Garten, Charleston, for appellee.

PER CURIAM:

This judicial disciplinary proceeding against Patsy J. McGraw, a Kanawha County magistrate, arises from a complaint filed with the Judicial Hearing Board by the Judicial Investigation Commission charging Magistrate McGraw with violation of Canon 1, Canon 2A, and Canon 3A(1)–(4) of the West Virginia Judicial Code of Ethics.[1] The Board recommends that

---

1. Canon 1 of the Judicial Code of Ethics provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, main-

the complaint be dismissed because the charges against the magistrate have not been proven by clear and convincing evidence. Based on this Court's independent review of the record presented, we hereby dismiss the complaint.

■ As this Court said in Syllabus Point 1 of *West Virginia Judicial Inquiry Commission v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980): "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial Review Board [now 'Judicial Hearing Board'] in disciplinary proceedings." The burden of proof with respect to the allegations of a complaint in a judicial proceeding was stated in Syllabus Point 4 of *In Re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983): "Under Rule III(C)(2) (1983 Supp.) of the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates, the allegations of a complaint in a judicial disciplinary proceeding 'must be proved by clear and convincing evidence.'"

The complaint filed by the Commission charges that the magistrate (1) improperly refused to issue a domestic violence protective order against a husband as requested by his wife on July 21, 1983; (2) considered *ex parte* communications with the husband's mother in denying the complainant's request for the domestic violence protective order; (3) attempted to initiate telephone calls to the husband and his mother on July 21, 1983, while on the bench considering the wife's complaint; and (4) acted in an undignified and discourteous manner when, at a hearing scheduled on December 9, 1983, the complainant indicated her desire to file an affidavit of prejudice against the magistrate. The Board found that a divorce action was pending at the time the complainant sought the domestic violence protective order and that the magistrate had therefore properly refused to issue a domestic violence protective order. With regard to the hearing scheduled on December 9, 1983, the Board found that the magistrate voluntarily recused herself from presiding over the case. Based on these findings, the Board recommends that the complaint against the magistrate be dismissed.

I.

Sometime in May of 1983, the complainant moved from her marital residence and instituted divorce proceedings against her husband. The complainant testified that, on July 18, 1983, her husband intruded while she was teaching a class at her church and, although not striking her, com-

taining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.
Canon 2A of the Judicial Code of Ethics provides:
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canon 3A of the Judicial Code of Ethics provides:
The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities.
(1) A judge should be faithful to the law and maintain professional competence in it. He sould [*sic*] be unswayed by partisan interests, public clamor, or fear of criticism.

(2) A judge should maintain order and decorum in proceedings before him.
(3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.
(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

mitted acts which constituted assault.[2] Three days later, on July 21, 1983, the complainant appeared before the magistrate seeking "protection" from her husband in the form of a domestic violence protective order as authorized by West Virginia Code §§ 48–2A–5 and –6 (1986 Replacement Vol.).

The magistrate advised the complainant that a domestic violence protective order could not be issued because of the pending divorce proceedings. The magistrate then questioned the complainant to determine what criminal offense, if any, the complainant's husband committed on July 18, 1983. The complainant did not make a formal complaint. She discussed her complaint with the magistrate. According to the magistrate's testimony, she concluded, upon the information provided by the complainant, that the complainant's husband had not done anything to justify the issuance of an assault warrant and she therefore refused to issue one. The complainant, on the other hand, contended in her testimony that the magistrate made statements which indicated that the magistrate had had prior communications with the husband's mother about the pending divorce; that the magistrate attempted to call both the complainant's husband and his mother from the bench; and that the magistrate refused to issue an assault warrant because she was personally biased in the husband's favor and against the wife. The magistrate denied these allegations in her testimony before the Board.

■ The magistrate acted properly in refusing to issue a domestic violence protective order to the complainant during the pendency of divorce proceedings. Article 2A of West Virginia Code chapter 48 deals with the prevention of domestic violence. Most curiously, section 1 of that article sets forth the mandate followed by the magistrate: "no proceeding under this article shall be initiated during the pendency of a divorce action between the person seeking relief under the provisions of this article and the alleged defendant."

Although the pendency of a divorce action precludes issuance of a domestic violence protective order by a magistrate, nothing prohibits an abused spouse from charging the other spouse with criminal conduct. W.Va.Code § 48–2A–1. This Court recognized in *Matter of Greene*, 173 W.Va. 406, 317 S.E.2d 169 (1984), that a magistrate commits a legal error by failing to provide complaint forms to a person who seeks to charge another with criminal conduct. Likewise, a magistrate commits a legal error by making a probable cause determination based solely on an oral statement made by a complainant instead of upon facts set forth in a written complaint or affidavit attached thereto. In Syllabus Point 3 of *Matter of Monroe*, 174 W.Va. 401, 327 S.E.2d 163 (1985), this Court held:

The determination of whether probable cause exists to support the issuance of an arrest warrant under *W.Va. R.Crim.P.* 4 is solely a judicial function to be performed by the magistrate and is to be based upon the contents of "the complaint, or from an affidavit or affidavits filed with the complaint."

■ The evidence presented does not clearly and convincingly prove that the magistrate deliberately failed to follow the established procedure relating to complaints, but rather shows that the magistrate made a legal error by relying on what she termed the "normal procedure"—orally questioning the complainant to determine whether probable cause existed—instead of basing that determination upon the contents of a written complaint or affidavit. *See* Syl. Pt. 2, *In Re Pauley*, 173 W.Va. 475, 318 S.E.2d 418 (1984). In Syllabus

---

**2.** The complainant testified that her husband was very irate when he came into the classroom; that he made threatening remarks to her; and that he blocked her way with his arm. West Virginia Code § 61–2–9(b) (1984 Replacement Vol.) defines assault as follows:

(b) *Assault.—If any person* unlawfully attempts to commit a violent injury to the person of another or *unlawfully commits an act which places another in reasonable apprehension of immediately receiving a violent injury,* he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail for not more than six months, or fined not more than one hundred dollars, or both such fine and imprisonment. (emphasis added).

Point 1 of *West Virginia Judicial Inquiry Commission v. Casto*, 163 W.Va. 661, 263 S.E.2d 79 (1979), this Court held: "Where a judge, with no intent to prejudice the rights of a party, makes a legal error, his act does not constitute a violation of Canon 2A or Canon 3 of the Judicial Code of Ethics."

■ There is no question that Canon 3A(4) of the Judicial Code of Ethics provides that, except as authorized by law, a judge must neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. Any *ex parte* communications by a judge excites sensitivity to this provision, and the presence of clear and convincing proof of unauthorized communications would be highly offensive. In this case, the magistrate denied considering or attempting to initiate *ex parte* communications when the complainant appeared before her on July 21, 1983. The record shows that an *ex parte* telephone call occurred between the magistrate and the husband's mother sometime before July 21, 1983; however, both the magistrate and the husband's mother testified that their discussion concerned a different issue than the one at bar. It is implicit in the Board's recommendation to dismiss the complaint that it found the magistrate's testimony more credible than the complainant's and that it believed that the magistrate did not consider nor attempt to initiate *ex parte* communications as alleged.

The Board was apparently not convinced that the magistrate's actions were influenced by personal bias or *ex parte* communications, and neither are we. Thus, this Court will follow the Board's recommendation that the magistrate's conduct on July 21, 1983 did not constitute a violation of Canons 1, 2A or 3A of the Judicial Code of Ethics.

## II.

■ The other charge against the magistrate concerns her demeanor on December 9, 1983. The complainant had been successful in having another magistrate issue

an assault warrant against her husband, and, after several continuances, a hearing on the matter was scheduled for that day. According to the complainant's testimony, she called the court on the morning of the scheduled hearing and was advised that the matter was scheduled to be heard by another magistrate. Upon arriving at the court, however, the complainant learned that the case would be heard by Magistrate McGraw. The complainant then conferred with the two prosecuting attorneys handling the case about filing an affidavit of prejudice to have the case removed.[3] One of the prosecuting attorneys offered to help the complainant prepare the affidavit and informed the magistrate of the complainant's intentions.

The complaint alleges that the magistrate responded in an undignified and discourteous manner toward the complainant. According to the complainant's testimony, the magistrate accused the complainant, in a harsh, loud voice of attempting to shop for a favorable magistrate to hear the case. Both of the prosecuting attorneys testified to the effect that the magistrate was upset by the complainant's plan to file the affidavit of prejudice; that the magistrate raised her voice somewhat; and that the magistrate told the complainant that she disapproved of magistrate shopping.

The magistrate denied losing her temper at the hearing. Instead, she told the Board that she always speaks in a clear and loud voice when in court. She admitted, however, that she explained to the complainant that it was improper to attempt to find a favorable magistrate. The magistrate then voluntarily recused herself from hearing the case.

The duty of a judge to be patient, dignified, and courteous to litigants is mandated by Canon 3A(3) of the Judicial Code of Ethics. "Unquestionably, judges may be appropriately disciplined for abusive, insulting, intemperate, obscene, profane, threatening, vulgar, or other offense language." *In Re Pauley*, 173 W.Va. 228,

**3.** West Virginia Code § 50–4–7 (1986 Replacement Vol.), permits any party to file one peremptory "affidavit of prejudice" against a magistrate, and, upon filing the affidavit, the case must be transferred to another magistrate.

235, 314 S.E.2d 391, 398 (1983). However, as we recognized in *Pauley:* "The characterization of ... speech as 'loud' is conclusory. [L]oudness of speech is in the ear of the hearer, what some may interpret as "loud," others may find 'forceful,' 'assertive,' or 'resolute.' 'Loud' as a characterization upon which to base a conclusion of abusiveness is overbroad." *Id.* at 173 W.Va. at 232, 314 S.E.2d at 395. There is no evidence here which indicates that the magistrate " 'yelled,' 'screamed,' 'shouted,' or 'roared' " at the complainant. *Id.*

■ It was inappropriate for the magistrate, in the judicial forum, to attempt to explain the evils of magistrate shopping to the complainant. As noted previously, however, the commission of an error does not constitute an ethical violation unless the judge intended to prejudice the rights of a party. *See* Syl. Pt. 1, *Casto,* 163 W.Va. 661, 263 S.E.2d 79. The evidence presented does not clearly and convincingly prove that the magistrate intended to prejudice the complainant's rights. To the contrary, the magistrate voluntarily recused herself, and the case was assigned to a different magistrate. Nevertheless, the Court admonishes all magistrates to refrain from lecturing a person who intends to file an affidavit of prejudice against the magistrate. Any party in a criminal proceeding has a one-time peremptory right to disqualify a magistrate by filing an affidavit stating the magistrate has a personal bias or prejudice against the party or in favor of any opposite party. W.Va.Code § 50-4-7; *see also Manning v. Inge,* 169 W.Va. 430, 288 S.E.2d 178 (1982).

Because clear and convincing evidence was not presented to support the allegations of misconduct against the magistrate, we will follow the recommendation of the Judicial Hearing Board that the complaint be dismissed.

Complaint dismissed.